UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------X
HASSAN MOHAMED ALI SALEM, *et al.*,

                              Plaintiffs,

                  -against-

MICHAEL RICHARD POMPEO, *et al.*,

                              Defendants.
-----------------------------------------------------------X

**REPORT AND RECOMMENDATION**
19 CV 0363 (DG) (CLP)

**POLLAK**, United States Magistrate Judge:

On January 17, 2019, plaintiffs, United States citizen children and United States citizen parents of children seeking U.S. passports and Consular Reports of Birth Abroad ("CRBA")[1] commenced this action, seeking to enjoin the U.S. Embassy in Djibouti from restricting their right to counsel during passport and CRBA interviews (Compl.[2] ¶ 5), and requesting, among other relief, "the right to access legal representation" during these appointments. (Id., Prayer for Relief). Plaintiffs alleged violations of their rights under the Constitution and the APA. (Id.)

On January 8, 2020, the Honorable Sterling Johnson, Jr., United States District Judge, issued an Order denying plaintiffs' motion for a preliminary injunction and granting the government's motion to dismiss with respect to 31 plaintiffs who the court found no longer had standing because their documents had been issued and they were either in the United States or admissible. Salem v. Pompeo, 432 F. Supp. 3d 222, 233-36 (E.D.N.Y. 2020). The court also dismissed plaintiffs' Bivens claim, along with plaintiffs' right to counsel claims based in Substantive Due Process, Equal Protection, and the Ninth Amendment, finding them to be

---

[1] CRBAs are reports documenting the birth of a U.S. citizen abroad and serve as an official determination of citizenship.
[2] Citations to "Compl." refer to the Complaint filed on January 17, 2019. (ECF No. 1).

1

"without precedent" and lacking in a "cogent legal theory." Id. at 237-39.  Two causes of action remain: (1) the alleged violation of plaintiffs' statutory right to counsel under 5 U.S.C. § 555(b) (Count Two); and (2) the alleged violation of plaintiffs' Fifth Amendment Procedural Due Process rights (Count Three).  Id.

Currently pending before this Court on referral from the Honorable LaShann DeArcy Hall[3] is the government's motion for remand and a temporary stay of this action to allow the U.S. Department of State (the "State Department") an opportunity to replace, through public notice and comment rulemaking, the existing policy regarding the presence and participation of counsel at passport and CRBA interviews at the U.S. Embassy in Dijbouti.  (ECF No. 163).  For the reasons set forth below, it is respectfully recommended that defendants' motion be denied.

BACKGROUND

The circumstances leading to this action are set forth in more detail in Judge Johnson's January 8, 2020 Order and incorporated by reference herein.  The facts most relevant to the instant motion are set forth below.

As background to this dispute, all first-time U.S. passport applicants living abroad must appear at a U.S. Embassy or consulate and submit to an in-person interview to verify their identity, assess their credibility, and determine the reliability of documents submitted in connection with their applications.  Salem v. Pompeo, 432 F. Supp. 3d at 227.  Consular officials abroad are also required to conduct in-person interviews in determining whether the State Department should issue a CRBA.  Id.

In 2015, following the shutdown of the U.S. Embassy in Sana'a, Yemen, the Embassy in Djibouti began processing Yemeni immigrant visa and passport applications and CRBA

---

[3] The case was reassigned to Judge DeArcy Hall on October 13, 2022.

2

applications for children born in Yemen to U.S. citizens.  Id.  In November 2018, the Embassy in Djibouti issued a new policy stating that attorneys could no longer attend interviews of U.S. citizens applying for passports and CRBAs (the "November Policy"), based on claims that attorney participation had interfered with the consular officers' ability to elicit information needed to adjudicate these applications.  Id. at 228; (see also Certified Administrative Record ("CAR") at 618 (ECF No. 101-1)).

Plaintiffs then brought the instant action on January 17, 2019, seeking to enjoin the Embassy from denying U.S. citizens the right to legal representation during these interviews.  Id. at 226.  Shortly thereafter, the November Policy was rescinded and replaced by a new policy issued in February 2019 (the "February Policy").[4]  Id. at 228.  The February Policy allowed attorneys to be present but continued to restrict their roles during the interviews.  Id.; (See ECF No. 40-4).  This change appeared to be responsive to the lawsuit at issue.  Id.  Among other things, the February Policy prohibited attorneys from engaging in legal argument, objecting to a consular officer's question on any ground, objecting to or insisting on an interpreter in the interviews, summarizing or attempting to clarify an applicant's answer, and interrupting or instructing the applicant not to answer the officer's questions.  Id.  In April 2019, the State Department directed that all U.S. embassies and consulates apply the February Policy worldwide.  (CAR at 679-83).

In issuing his decision denying the motion for preliminary injunction and granting in part the government's motion to dismiss, Judge Johnson explicitly found that the November Policy "barring attorneys entirely from attending passport and CRBA interviews violates due process." Salem v. Pompeo, 432 F. Supp. 3d at 238.  However, he reserved decision on plaintiffs' claims

---

[4] Judge Johnson held that the plaintiffs were not required to amend their complaint in light of the February Policy. Salem v. Pompeo, No. 19 CV 0363, 2020 WL 13881690, at *3-4 (E.D.N.Y. Sept. 30, 2020).

that the limits placed on attorney participation set out in the February Policy also violate due process.  Id. at 238-39.

On February 13, 2020, the government moved for summary judgment on the grounds that the plaintiffs remaining after Judge Johnson's partial dismissal lacked standing because they could not demonstrate injury-in-fact, and that the February Policy was within the government's authority to implement and not contrary to the APA.  (ECF Nos. 71, 83).  On September 30, 2020, Judge Johnson deferred ruling on the motion for summary judgment,[5] directing the government to file the CAR, and ordering the parties to conduct certain discovery.  (ECF No. 95 at 11).

Thereafter, beginning in June 2021, the parties engaged in settlement negotiations before the undersigned, which continued over nine months and focused on developing an interim policy relating to attorney attendance at passport and CRBA interviews.  The government contends that while settlement negotiations continued, the State Department chose not to begin the rulemaking process, hoping that if an agreement could be reached on an interim policy, that interim policy could be used to inform the draft rule.  (Defs.' Mem.[6] at 4).  When it became clear that the parties had reached an impasse and a negotiated settlement was unlikely, the State Department began the process of commencing notice and comment rulemaking in an effort to develop a rule addressing the issues.  (Id. at 4, 7).

On April 22, 2023, the government served the instant Motion for Voluntary Remand (ECF Nos. 163, 164), in order to allow the State Department to address the policies set out in the

---

[5] On April 4, 2022, Judge Johnson denied the government's motion for summary judgment, with leave to renew upon resolution of the instant motion for voluntary remand and the government's motion for reconsideration of his September 30, 2020 discovery order.
[6] Citations to "Defs.' Mem." refer to The Government's Memorandum of Law in Support of Its Motion for A Voluntary Remand, dated April 22, 2022.  (ECF No. 164).

4

November 2018 and February 2019 Policies concerning attorney attendance at consular interviews, and to issue a new rule under the APA which would describe the parameters of attorney attendance in a federal regulation to be applied worldwide. (Id. at 7). The government argued that a remand allowing for notice and the solicitation of public comment is important, particularly in a case such as this where the rule is intended to be one of general application worldwide. (Id.) Although the State Department had not issued a proposed rule at the time the government filed the instant motion, the government submitted a letter on August 27, 2023, informing the Court that on July 26, 2023, the State Department had issued a Notice of Proposed Rulemaking, along with the proposed rule (the "Proposed Rule"). (See ECF No. 167 (citing Notice of Proposed Rulemaking, Public Notice: 11999, titled "Third-Party Attendance at Appointments for Passport, Consular Report of Birth Abroad (CRBA), and Certain Other Services," published in Vol. 88, No. 142, of the Federal Register, 88 FR 48143-01, 2023 WL 4743863)). The Proposed Rule, in relevant part, states that:

> A person appearing for a passport appointment at a passport agency or center domestically or a U.S. embassy or consulate overseas or for a Consular Report of Birth Abroad (CRBA) appointment overseas may be physically accompanied by a private attorney, interpreter, and/or other third party of their own choice at their own expense to provide assistance.

The government's letter indicated that the State Department would be accepting comments on the Proposed Rule until September 25, 2023. (ECF No. 167 at 2).

In a letter filed on September 1, 2023, plaintiffs assert that the new Proposed Rule simply codifies the February Policy challenged in this case since the Proposed Rule still only allows attendance, and not full participation, by attorneys at these interviews. (ECF No. 168 at 1). Accordingly, plaintiffs argue that remand is not appropriate and will be ineffective because the Proposed Rule is essentially the same as the February Policy and subject to the same objections

5

raised in opposition to the February Policy.  (Id.)

Having considered the parties' respective arguments and for the reasons set forth below, the Court respectfully recommends that the government's Motion for Voluntary Remand be denied.

DISCUSSION

A. Legal Standards For Remand

A federal agency "may request a remand, without confessing error, to reconsider its previous position." SKF USA Inc. v. United States, 254 F.3d 1022, 1028 (Fed. Cir. 2001).  "[I]f the agency's concern is substantial and legitimate, a remand is usually appropriate." Id. at 1029; see also Carpenters Indus. Council v. Salazar, 734 F. Supp. 2d 126, 132 (D.D.C. 2010).  Courts have "broad discretion to grant or deny an agency's motion to remand." Utility Solid Waste Activities Grp. v. Environmental Prot. Agency, 901 F.3d 414, 436 (D.C. Cir. 2018) (citing Limnia, Inc. v. Department of Energy, 857 F.3d 379, 381, 386 (D.C. Cir. 2017)).  Courts "prefer[] to allow agencies to cure their own mistakes," Ethyl Corp. v. Browner, 989 F.2d 522, 524 (D.C. Cir. 1993), and generally grant an agency's motion to remand so long as "the agency intends to take further action with respect to the original agency decision on review." Utility Solid Waste Activities Grp. v. Environmental Prot. Agency, 901 F.3d at 436 (quoting Limnia, Inc. v. Department of Energy, 857 F.3d at 381, 386).

In considering whether remand is appropriate, courts consider whether granting the motion to remand would conserve time and resources without causing undue prejudice.  FBME Bank Ltd. v. Lew, 142 F. Supp. 3d 70, 73 (D.D.C. 2015) (citing Ethyl Corp. v. Browner, 989 F.2d at 524; American Forest Res. Council v. Ashe, 946 F. Supp. 2d 1, 47 (D.D.C. 2013)). "Reconsideration must. . . occur within a reasonable time after the first decision." Frito-Lay, Inc.

6

v. U.S. Dep't of Lab., 20 F. Supp. 3d 548, 554 (N.D. Tex. 2014) (quoting Macktal v. Chao, 286 F.3d 822, 826 (5th Cir. 2002)). Courts also consider whether "the agency's request appears to be frivolous or made in bad faith." Clark v. Perdue, No. 2019 CV 0394, 2019 WL 2476614, at *2 (D.D.C. June 13, 2019) (quoting SKF USA Inc. v. United States, 254 F.3d at 1029). If a remand is found to be warranted, the proceedings before the district court should be stayed while the case is on remand. See, e.g., Code v. McHugh, 139 F. Supp. 3d 465 (D.D.C. 2015).

### B. Rulemaking Under the APA

In this case, the government's motion seeks a remand and a stay of this action in order to allow the State Department to engage in rule making under the Administrative Procedure Act, 5 U.S.C. § 553. Before adopting a rule, the APA requires the agency to undertake a three-step process for notice and comment rulemaking: the agency must first provide public notice of the rule. Perez v. Mortgage Bankers Ass'n, 575 U.S. 92, 96 (2015). After providing notice through publication in the Federal Register, the agency must give interested persons an opportunity to submit written views or arguments, and the agency is required to consider and respond to significant comments. 5 U.S.C. §§ 553(b), (c); Perez v. Mortgage Bankers Ass'n, 575 U.S. at 96. Finally, "not less than 30 days before its effective date," the rule must be published in the Federal Register and include a statement of the purpose and basis of the rule. 5 U.S.C. §§ 553(c), (d).

### C. Appropriateness of Voluntary Remand

In seeking voluntary remand, the government described plaintiffs' remaining claims as arising under the APA. (Defs.' Mem. at 3 n.3). The government argued that remand would allow the State Department to address the very agency action challenged in this case and to establish a rule that sets forth the parameters of attorney attendance in a federal regulation

7

intended for worldwide application, not just to address the issues in this case. (Id. at 7). The benefit to adopting a rule after notice and comment, instead of a revised policy, is that the government would be bound by a rule, which has the force and effect of law. (Id. at 10 (citing Perez v. Mortgage Bankers Ass'n, 576 U.S. at 96)). The government further argued that remand would allow the public, including the plaintiffs remaining in this action, to comment on the proposed rule, ensuring that the concerns of as many stakeholders as possible would be considered. (Id. at 8). Additionally, the government argued that judicial evaluation of the existing attorney attendance policy, while the State Department was in the process of implementing changes through the rulemaking policy, would be inconsistent with the efficient use of judicial resources. (Id.) Moreover, the government argued that remand would not prejudice plaintiffs because, even if plaintiffs were to prevail in this action, the court would not be able to re-write the State Department policy but would remand the case to the State Department for further action. (Id. at 9 (quoting N. Air Cargo v. USPS, 674 F.3d 852, 861 (D.C. Cir. 2012) (explaining that "[w]hen a district court reverses agency action and determines that the agency acted unlawfully, ordinarily the appropriate course is simply to identify a legal error and then remand to the agency"))). In addition to remand, the government also requested a temporary stay which is now moot.[7]

Plaintiffs respond by arguing that defendants continue to mischaracterize plaintiffs' claims as APA claims despite the allegations in Count Three of the Complaint which set forth a "claim that the November Policy violated a right to counsel rooted in the Fifth Amendment's Due Process Clause." Salem v. Pompeo, 432 F. Supp. 3d at 237; (see also Compl. Count Three:

---

[7] The government requested a temporary stay for 120 days to allow for the initiation of the notice and comment process. (Defs.' Mem. at 11). Given that the rule has been proposed, notice was given, and the period for comment has concluded, the government's request for a temporary stay is moot. The issue remaining is whether remand is nevertheless appropriate.

Violation of Plaintiffs' Fifth Amendment Due Process Right to Counsel).  Plaintiffs argue that Judge Johnson recognized that this was not a claim brought under the APA, since he directed the government to respond to plaintiffs' discovery demands related to "the balancing this Court must conduct under Mathews v. Eldridge, 424 U.S. 319 (1976), regarding the February Policy."[8] (Pls.' Mem. at 7 (quoting Salem v. Pompeo, 2020 WL 13881690, at *4)).  Plaintiffs also cite cases where defendants have raised and lost similar arguments in other courts.  (See Pls.' Mem. at 14 (citing Sabra ex rel. Baby M v. Pompeo, 453 F. Supp. 3d 291, 313 (D.D.C. 2020) (where the plaintiff challenged the Embassy's failure to issue a passport and CRBA as a violation of the Due Process Clause of the Fifth Amendment, the court stated: "where, as here, 'the Constitution is the source of the right allegedly violated, no other source of a right – or independent cause of action – need be identified'")).  Plaintiffs crucially note that in reviewing an agency's determination of constitutional issues, the court need not defer to the agency, and must engage in *de novo* review.  (Pls.' Mem. at 16 (citing Sanders v. Szubin, 828 F. Supp. 2d 542, 548 (E.D.N.Y. 2011)).  Apart from not addressing plaintiffs' constitutional claim, plaintiffs also argue that remand should be denied because it acts as dismissal of their claims, would not address the original agency action, and is an untimely, bad faith, and prejudicial tactic to avoid judicial review.  (Pls.' Mem.).

Defendants' Reply continues to argue that both of plaintiffs' claims arise under the APA, and states that even if there were a constitutional challenge, that would not be fatal to their Motion to Remand.  (Defs.' Reply[9] at 4-5 (citing Frito-Lay, Inc. v. U.S. Dep't of Lab., 20 F.

---

[8] Defendants' Motion for Reconsideration requesting that no discovery be permitted outside of the production of the CAR was denied by Judge DeArcy Hall on March 17, 2023, with leave to renew pending the outcome of the Motion for Voluntary Remand.

[9] Citations to "Defs.' Reply" refer to Defendants' Reply Memorandum of Law in Further Support of Their Motion for Voluntary Remand dated June 12, 2022.  (ECF No. 166).

Supp. 3d at 558 (rejecting plaintiff's argument that remand would be premature because constitutional challenges had been raised, and granting the voluntary remand, finding the constitutional challenge to be "unripe"))).  Thus, defendant argues that even if one of plaintiffs' claims arises under the Fifth Amendment, "[T]his Court can and should remand Plaintiff's challenge [sic] to the extent it arises under the APA."  (Id.)  Defendants also argue that the remand request is timely, in good faith, and non-prejudicial.  (Defs.' Reply).

   D.  Analysis

As an initial matter, plaintiffs have continually asserted that Count Three of their Complaint alleges a constitutional violation needing "no other source," Sabra ex rel. Baby M v. Pompeo, 453 F. Supp. 3d at 313, and this Court has treated the claim as such.  Salem v. Pompeo, 432 F. Supp. 3d at 237; see also Salem v. Pompeo, 2020 WL 13881690, at *4 (denying motion for reconsideration).  Thus, the remand could only be maintained "to the extent [Plaintiff's challenge] arises under the APA."  (Defs.' Reply at 4-5).

At the time plaintiffs submitted their memorandum in opposition to defendants' remand motion, the State Department had not issued its Proposed Rule and, as a consequence, plaintiffs were unable to evaluate whether the Proposed Rule adequately addressed the concerns raised in this case.  However, following the issuance of the Proposed Rule and its publication in the Federal Register, plaintiffs filed a responsive letter on September 1, 2023.  (Pls.' Ltr.[10]).  In the letter, plaintiffs argue that voluntary remand is inappropriate because the Proposed Rule "is simply a restatement of the policy that was being challenged 3 years ago" before the commencement of settlement negotiations, and merely codifies the current policy set out in the February Policy, by only allowing individuals appearing for passport or CRBA appointments to

---

[10] Citations to "Pls.' Ltr." refer to Plaintiffs' Letter filed on September 1, 2023.  (ECF No. 168).

"be physically accompanied by a private attorney, interpreter, and/or other third party . . .to provide assistance." (Id. at 1, 3 (citing Proposed Rule)). Quoting Judge Johnson's Order denying defendants' motion to dismiss, plaintiffs explain that "[w]hile the [February] Policy does allow attorneys to attend their clients' interviews, it by no means restores the role of attorneys to Embassy Djibouti's pre-November modus operandi," noting that attorneys still may not engage in legal arguments, clarify or respond to consular officials' questions, or provide guidance to applicants during the interview. (Pls.' Ltr. at 2 (citing Salem v. Pompeo, 432 F. Supp. 3d at 234-35 (E.D.N.Y. 2020))); see also Salem v. Pompeo, 2020 WL 13881690, at *4 (E.D.N.Y. Sept. 30, 2020) (denying defendants' motion for reconsideration and reiterating that while the February Policy "may disadvantage [Plaintiffs] to a lesser degree than the old one. . .it disadvantages them in the same fundamental way") (citing Northeastern Florida Chapter of Assoc'd Gen'l Contractors of America v. City of Jacksonville, Fla., 508 U.S. 656 (1993)). Thus, since the Proposed Rule does not address many of the issues raised by plaintiffs in this action and most specifically, the scope of attorney participation during consular interviews, plaintiffs argue that remand is not appropriate. (Pls.' Ltr. at 3).

Remand is futile if "there is not the slightest doubt that the [agency] would simply reaffirm its order." Stevenson v. Wormuth, No. 22 CV 601, 2023 WL 3791721, at *4 (D. Conn. June 1, 2023). Here, the Court benefits from having the agency's Proposed Rule, which states that individuals appearing for CRBA or passport appointments "may be physically accompanied" by an attorney, but fails to address the other concerns raised by plaintiffs in this case. Specifically, the Proposed Rule does not explicitly allow for any participation by the attorney, only their physical presence. For this reason, it is subject to all the critiques plaintiffs have raised with respect to the February Policy.

11

Since the new Proposed Rule does not resolve plaintiffs' claims, remand would be futile, and it would not conserve judicial or party resources to grant it. Rather, a remand would serve only as an additional delay since plaintiffs' concerns about the constitutionality of the limits of attorney participation that remain under the existing policy would still need to be addressed by the court. A more efficient use of resources is for the Court to proceed in determining the statutory and constitutional requirements of passport and CRBA interviews as pertaining to attorney participation. See Salem v. Pompeo, 432 F. Supp. 3d at 237-38.

Remand to allow for further agency review is inappropriate where, as here, the agency has already promulgated a proposed rule which does not address plaintiffs' claims.

## CONCLUSION

Given that a remand would be futile in that the Proposed Rule fails to remedy the concerns raised by plaintiffs and it is unlikely that the agency intends to take further steps to address these concerns, the Court respectfully recommends that the Motion for Voluntary Remand be denied.

Any objections to this Report and Recommendation must be filed with the Clerk of the Court, with a copy to the undersigned, within fourteen (14) days of receipt of this Report. See 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(2); see also Fed. R. Civ. P. 6(a) (providing the method for computing time). Failure to file objections within the specified time waives the right to appeal the District Court's order. See, e.g., Caidor v. Onondaga Cty., 517 F.3d 601, 604 (2d Cir. 2008).

**SO ORDERED.**

Dated: November 20, 2023
Brooklyn, New York

/s/ Cheryl L. Pollak
Cheryl L. Pollak
United States Magistrate Judge
Eastern District of New York